IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WELLSHIRE FINANCIAL SERVICES, LLC, ET AL. | § § § | |
| v. | § § § § | CIVIL ACTION NO. 4:17-cv-02786 |
| TMX FINANCE LLC, ET AL. | | |

**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(C)**

Defendants, TMX Finance LLC ("TMX Finance"), TMX Finance of Texas, Inc. ("TMX Finance of Texas"), and TitleMax of Texas, Inc. ("TitleMax of Texas") (collectively, "Defendants"), respectfully move this Court to grant this motion for judgment on the pleadings for tortious interference with contract and tortious interference with prospective contracts and business relationships asserted by Plaintiffs Wellshire Financial Services, LLC ("Wellshire"); Meadowwood Financial Services, LLC ("Meadowwood"); and Integrity Texas Funding, LP ("Integrity," and collectively with Wellshire and Meadowwood, "Plaintiffs") under Federal Rule of Civil Procedure 12(c). Plaintiffs' tortious interference claims should be dismissed as (1) Plaintiffs do not identify any specific contracts where Defendants' interference proximately caused Plaintiffs' injury and resulted in actual damages to Plaintiffs; (2) Plaintiffs do not identify any prospective business relationships where Defendants' interference proximately caused Plaintiffs' injury and resulted in actual damages to Plaintiffs; and (3) Plaintiffs failed to plead the existence of any contractual provision with which Defendants interfered and caused Plaintiffs' customers to breach. In the alternative, Defendants request that the Court order Plaintiffs to replead with sufficient detail to identify the contracts at issue and the provisions prohibiting Plaintiffs' customers from utilizing the services of Plaintiffs' competitors.

## I. PROCEDURE & BACKGROUND

Plaintiffs filed their Third Amended Petition and Request for Disclosure ("Plaintiffs' Third Amended Petition") on August 16, 2017 in state court. *See* Plaintiffs' Third Amended Petition, attached as **Exhibit A**. Defendants' Fourth Amended Answer and Affirmative Defenses was previously filed on July 6, 2017 in state court, and contained a general denial of Plaintiffs' claims. *See* Defendants TMX Finance of Texas, Inc.; TitleMax of Texas, Inc.; and TMX Finance LLC's Fourth Amended Answer and Affirmative Defenses, attached as **Exhibit B**. In Texas, when a defendant has pled a general denial, and the plaintiff amends its pleading, "such original denial shall be presumed to extend to all matters subsequently set up by the plaintiff." *See* Tex. R. Civ. P. 92. Accordingly, the pleadings have closed and this motion is ripe for adjudication.[1] *See* Fed. R. Civ. P. 12(c) & 81(c)(2). Further, this motion is presented early enough not to delay trial. *See* Fed. R. Civ. P. 12(c).

In Plaintiffs' Third Amended Petition, Plaintiffs sued Defendants for, among other things, tortious interference with contracts and tortious interference with prospective contracts and business relationships. Ex. A pp. 11-14. These claims state that Defendants interfered with Plaintiffs' customers by "(1) surreptitiously recording the customers' license plate numbers to perform impermissible searches of the DMV Records or (2) impermissibly searching the DMV Records by lienholder for Plaintiffs' customers." *Id.* ¶¶ 55, 60, & 65. In relevant part, Plaintiffs pled:

> Defendants have conspired to surreptitiously target and collect the license plate numbers of the customers in LoanStar's and Meadowwood's parking lots, and have used that information to perform impermissible searches for the customers' personal information in DMV Records. *Id.* ¶ 33.
>
> Access to the non-public DMV Records is strictly prohibited by state and federal statute, including the Texas Motor Vehicle Records Disclosure Act, Tex. Transp. Code

---

[1] While not at issue in the immediate motion, Defendants/Counterplaintiffs TitleMax of Texas, Inc. and TMX Finance of Texas, Inc. filed their Fourth Amended Counterclaim on July 6, 2017 and Plaintiffs/Counterdefendants' original denial is presumed to deny these claims and accordingly the response period has closed. *See* Tex. R. Civ. P. 92; Fed. R. Civ. P. 12(c) & 81(c)(2).

§730.001 et seq., and the federal Driver's Privacy Protection Act, 18 U.S.C. § 2721 et seq., except for specifically enumerated purposes. *Id.* ¶ 34.

Defendants actually use such information to solicit Plaintiffs' customers for loan products absent their consent or an opportunity to prohibit such solicitation, which is impermissible. *Id.* ¶ 35.

Through these acts, Defendants have sought to collect and compile the information contained in Plaintiffs' confidential customer lists for Defendants' use in the direct contact and solicitation of Plaintiffs' customers…then to solicit the identified customers via methods including direct mail and telephone calls, offering to buy out their loan(s) with Plaintiffs on terms they purport to be favorable for the customers. *Id.* ¶ 36.

For example, on or about January 18, 2013, Defendants utilized the United States Postal Service to send a letter to Plaintiffs' existing customer Ana Maria Ochoa, offering to buy out her current loan by issuing her a new loan on purportedly better terms. *Id.* ¶ 37.

Defendants' illegal and unlawful actions have interfered with and hindered Plaintiffs' ability to conduct their businesses and affairs with such customers, causing them to lose thousands of customers to Defendants as a direct result of the fraudulent scheme alleged herein. *Id.* ¶ 44.

Defendants were and are in fact using the personal information, including the name, address, date of birth, and driver's license number, to directly contact and solicit Plaintiffs' existing and prospective customers. Defendants' unlawful efforts have caused Plaintiffs to lose customers to Defendants. *Id.* ¶ 50.

## II. STANDARD

Rule 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." *Rigney v. City of Rowlett*, No. Civ. 304CV0590H, 2004 WL 1923873 at *1 (N.D. Tex. 2004) (citing Fed. R. Civ. P. 12(c)). Dismissal under Rule 12(c) is governed by the same standard as dismissal for failure to state a claim under Rule 12(b)(6). *Johnson v. Johnson,* 385 F.3d 503, 529 (5th Cir. 2004). A Rule 12(c) motion is appropriate if material facts are not in dispute and questions of law are all that remain. *See Hebert Abstract Co. v. Touchstone Props., Ltd.,* 914 F.2d 74, 76 (5th Cir. 1990). In deciding a Rule 12(c) motion, a court "must look only to the pleadings and accept all allegations in them as true." *St. Paul Fire & Marine Ins. Co. v. Convalescent Serv.,*

3

*Inc.,* 193 F.3d 340, 342 (5th Cir. 1999). Then, it must determine if "in the light most favorable to the claimant, the claim states a valid claim for relief." *Brittan Communications Intern. Corp. v. Southwestern Bell Tel. Co.,* 313 F.3d 899, 904 (5th Cir. 2002) (internal quotations omitted). Further, any documents expressly referenced in a complaint and attached to that pleading become a part of the pleading for purposes of a Rule 12(c) motion. *See Raybourne & Dean Consulting, Ltd.*, 2015 U.S. Dist. LEXIS 186149, *15 (W.D. Tex. 2015).

The Court should dismiss the claim if the claimant "would not be entitled to relief under any set of facts or any possible theory that [it] could prove consistent with the allegations in the claim." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). A claimant must plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992). In this case, the Court should grant Defendants' Motion because Plaintiffs have not, and cannot, state a valid claim for relief under any set of facts because the Plaintiffs' claims for tortious interference with contracts and tortious interference with prospective business relations fail to satisfy the elements necessary for these causes of action. Furthermore, the trial of this matter will not be delayed, nor justice otherwise impeded, if the Court grants this Motion.

### III. ARGUMENT

**A. Plaintiffs' Failure to Identify Specific Contracts where Defendants' Interference Proximately Caused Plaintiffs' Injury and Resulted in Actual Damages to Plaintiffs Entitles Defendants to Judgment on the Pleadings on Plaintiffs' Claims for Tortious Interference with Contract**

A plaintiff asserting tortious interference with contract must establish "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

4

To prevail on a claim for tortious interference with an existing contract, a plaintiff must present evidence that a defendant interfered with a *specific* contract. See *Alliantgroup, L.P. v. Solanji*, No. 01-12-00798-CV, 2014 WL 1089284, at *8 (Tex. App.—Houston [1st Dist.] Mar. 18, 2014, no pet.) (mem. op.) ("To prevail on a tortious interference claim, a plaintiff must present evidence that the defendant interfered with a specific contract.") (quoting *Funes v. Villatoro*, 352 S.W.3d 200, 213-14 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 361-62 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *Stroud Prod., L.L.C. v. Hosford*, 405 S.W.3d 794, 820 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (same); *McGehee v. Hagan*, 367 S.W.3d 848, 854 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (same); *Playboy Enterprises, Inc. v. Editorial Caballero, S.A. de C.V.*, 202 S.W.3d 250, 264-65 (Tex. App.—Corpus Christi 2006, pet. denied). "Surmise or suspicion" that conduct may have interfered with a contractual right is legally insufficient. *See All Am. Tel., Inc. v. USLD Commc'ns, Inc.*, 291 S.W.3d 518, 532-33 (Tex. App.—Fort Worth 2009, pet. denied).

Plaintiffs have failed to support their tortious interference claims with the identity of even one specific customer contract where interference by Defendants proximately caused Plaintiffs' injury and resulted in actual damage or loss. Plaintiffs instead assert blanket accusations that Defendants would solicit Plaintiffs' customers leading to interference. At most, Plaintiffs' allegations identify a single customer of Plaintiffs, Ana Maria Ochoa, who purportedly received a letter from Defendants on January 18, 2013. *See* Ex. A, ¶ 37. Despite filing their Third Amended Petition on August 16, 2017, Plaintiffs do not allege Ms. Ochoa, or any other identified person, was once a customer of Plaintiffs but subsequently became a customer of Defendants due to the conduct alleged in the Third Amended Petition. *See* Ex. A. This is a fatal flaw and even if the Court takes all of Plaintiffs' allegations as true, Plaintiffs are not entitled to relief for their tortious interference with contract claim.

Despite Plaintiffs' failure to identify a single customer's contract that was improperly converted by Defendants, Plaintiffs claim they, "have lost millions of dollars in profits[.]" *Id.* ¶ 45. This conclusory leap is unsubstantiated. If millions of dollars were lost, then surely identifying even one contract should be no obstacle. This shortcoming infects every element of Plaintiffs' claims because Plaintiffs' failure to identify a specific contract prevents the Court or Defendants from analyzing whether that specific contract is subject to interference, whether Defendants purportedly interfered with that contract, or whether that purported interference caused damages. Without identifying any contract, the requirements for pleading a tortious interference of contract claim are unsatisfied, and judgment should be ruled in favor of the Defendants on Plaintiffs' Tortious Interference with Integrity's Loan Contracts cause of action. *Id.* ¶¶ 53-57.

**B. Plaintiffs' Failure to Identify Specific Prospective Relations where Defendants' Interference Proximately Caused Plaintiffs' Injury and Resulted in Actual Damages to Plaintiffs Entitles Defendants to Judgment on the Pleadings on Plaintiffs' Claims for Tortious Interference with Prospective Relations.**

To prevail on a claim for tortious interference with prospective business relations or contracts, a plaintiff must establish that "(1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013), *reh'g denied* (Feb. 14, 2014).

"A plaintiff's subjective beliefs are insufficient to support a claim of a reasonable probability that the parties would enter into a contract." *Hart v. Attorneys-At Law*, No. 01-97-00890-CV, 1999 WL 2391, at *5 (Tex. App.—Houston [1st Dist.] Dec. 30, 1998, no pet.). As with a claim for tortious

interference with contract, Plaintiffs must identify specific prospective relations with which Defendants interfered. *See Mattei v. Int'l Conference of Funeral Serv. Examining Boards*, No. 1-15-CV-139 RP, 2015 WL 5125799, at *8 (W.D. Tex. Sept. 1, 2015) ("Therefore, Plaintiff has failed to show the Conference tortiously interfered with that specific prospective contract, a required element of the claim."); *Zhejiang Med. Co. v. Kaneka Corp.*, No. CV H-11-1052, 2012 WL 12893418, at *4 (S.D. Tex. Aug. 13, 2012) ("In order to establish tortious interference with a prospective business relationship, the plaintiff must identify clients with which it would have done business but for the defendant's conduct."); *Powerhouse Prods., Inc. v. Widgery*, No. 4:07-CV-071, 2008 WL 4331428, at *4 (E.D. Tex. Sept. 17, 2008) ("Notably, the Plaintiffs must refer to some specific prospective relationship that was misappropriated from them as a result of the Defendants' wrongful activity rather than merely asserting that some unidentified business opportunity was lost."); *compare Texas Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 369 (Tex. App.—Dallas 2009, pet. denied) ("Texas Integrated asserted the Terrys tortiously interfered with existing and prospective contracts, and identified forty existing or prospective customers it claimed were unlawfully taken.").

Just as Plaintiffs have failed to identify any particular customer contract(s) that were converted by Defendants through the conduct alleged in Plaintiffs' Third Amended Petition, there is nothing in the pleadings to show that any particular individual would have entered into a contract or business relationship with Plaintiffs but for the alleged conduct of Defendants. Likewise, Plaintiffs cannot establish any other elements because the pleadings are insufficient to support any particular relationship with which Defendants allegedly interfered. Judgment on the pleadings should be entered in favor of Defendants on Plaintiffs' claims for Tortious Interference with Integrity's Prospective Loan Contracts and Business Relationships and Tortious Interference with LoanStar's and Meadowwood's Prospective CSO Contracts and Business Relationships. *See* Ex. A, ¶¶ 58-62 & 63-67.

C. **The Court Should Dismiss Plaintiffs' Tortious Interference Claims, Consistent with Prior Case Law in the Southern District of Texas, as Plaintiffs Have Had Ample Opportunity to Sufficiently Plead their Case.**

Federal Rule of Civil Procedure 12(d) states that a motion under 12(c) must be treated as a motion for summary judgment if matters outside of the pleadings are presented to and not excluded by the Court. *See* Fed. R. Civ. P. 12(d). However, Courts may "'take judicial notice of documents in the public record . . . and may consider such documents in determining a motion to dismiss.'" *See Reed v. J.P. Morgan Chase Bank*, 4:14-CV-03623, 2015 WL 12839154, at *1, n. 2 (S.D. Tex. Feb. 24, 2015) (quoting *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 640 n. 2 (5th Cir. 2005). Consistent with the Court's ability to take judicial notice of documents in the public record without converting a motion under 12(c) to a motion for summary judgment, Defendants acknowledge the state court denied Defendants' initial motion for summary judgment on Plaintiffs' tortious interference claims. *See* Order Denying Motion for Summary Judgment, 11/16/2016, attached as **Exhibit C**. However, the motion for summary judgment was denied months prior to the state court's order compelling Plaintiffs' production of the identities and completed surveys of purportedly lost customers referenced in Plaintiffs' expert report. *See* Order Granting Part Defendants' Second Motion to Strike Plaintiffs' Expert Designations, 1/19/2017, attached as **Exhibit D** (ordering Plaintiffs to produce the identities and surveys of the 150 customers referenced in the expert report of Dr. Kenneth L. Bernhardt by 1/27/2017). Accordingly, the motion for summary judgment was not ripe for ruling. Moreover, Plaintiffs' Third Amended Petition was filed more than six months after the production of Plaintiffs' completed expert survey and nine months after the denial of Defendants' motion for summary judgment, and yet the pleading still fails to identify a single customer or contract purportedly lost due to Defendants' conduct as alleged in the Plaintiffs' Third Amended Petition. *See* Ex. A.

Further, similar claims have been dismissed by the Southern District of Texas for the same flaws present in this case. *See Zhejiang Med. Co., Ltd. v. Kaneka Corp.*, CV H-11-1052, 2012 WL 12893418,

8

(S.D. Tex. Aug. 13, 2012). In *Zhejiang Med.*, the defendant filed a motion to dismiss several claims brought by plaintiff, including tortious interference with prospective business relationships, tortious interference with existing business relationships, and tortious interference with contract. *Id.* at *4. These claims were based on 156 letters sent by defendant to plaintiff's customers, potential customers, and members of the trade, which stated defendant was infringing on a patent. *Id.* at *1. The plaintiff claimed that as a result of these letters, "some" of its existing and potential customers had refused to purchase plaintiff's products, or had threatened to cease purchasing plaintiff's products. *Id.*

Judge Gilmore's order stated the pleadings do "not allow the Court to infer that [defendant] has interfered with any specific existing or potential contracts." *Id.* at *5. Judge Gilmore dismissed each tortious interference claim due to the plaintiff's lack of specificity. *Id.* at *4-5. Here, Plaintiffs continue to fail to state any version of a tortious interference claim for which relief can be granted as Plaintiffs merely identify Ms. Ochoa as a customer who received a letter from TitleMax, but fail to allege she was wrongfully converted to Defendants or that she refused to continue doing business with Plaintiffs as a result of Defendants' alleged conduct. *See* Ex. A, ¶ 37.

**D. Plaintiffs' Failure to Plead How The Contract Is Subject to Interference Entitles Defendants to Judgment on the Pleadings on Plaintiffs Claims for Tortious Interference with Contract and Tortious Interference With Business Relations.**

A plaintiff claiming tortious interference with a contract must establish that the contract is itself capable of interference. *See ACS Inv'rs, Inc. v. McLaughlin*, 943 S.W.2d 426, 431 (Tex. 1997). In other words, "merely inducing a contract obligor to do what it has a right to do is not actionable interference." *Id.* at 430; *Schimmel v. McGregor*, 438 S.W.3d 847, 861 (Tex. App.—Houston [1st Dist.] 2014, pet. denied), reh'g overruled (Sept. 18, 2014), review denied (Mar. 13, 2015); *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 87 (Tex. App.—Houston [1st Dist.] 2013, no pet.), reh'g overruled (Dec. 19, 2013), review denied (May 16, 2014); *AKB Hendrick, LP v. Musgrave Enterprises, Inc.*, 380 S.W.3d 221, 236 (Tex. App.—Dallas 2012, no pet.); *New York Life Ins. Co. v. Miller*,

9

114 S.W.3d 114, 125-26 (Tex. App.—Austin 2003, no pet.); *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 857 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *Bank One, Texas, N.A. v. Stewart*, 967 S.W.2d 419, 448 (Tex. App.—Houston [14th Dist.] 1998, pet. denied); *Johnson v. Affiliated Computer Servs., Inc.*, No. 310-CV-2333-B, 2011 WL 4011429, at *4 (N.D. Tex. Sept. 9, 2011), aff'd sub nom. *Johnson v. Affiliated Computer Servs., Inc.*, 500 F. App'x 265 (5th Cir. 2012).

For example, in *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, the First Court of Appeals held that a prima facie case for tortious interference with contract could not stand where the defendants did not influence contracting third parties to do anything other than exercise their contract rights. 416 S.W.3d at 87. In that case, an assisted living facility was engaged in a dispute with a home health care provider and gave its residents the option to either restrict their choice of provider to certain approved providers or vacate the assisted living facility. *Id.* at 78. The court explained that a claim for tortious interference with contract could not stand because the defendants did not influence the residents "to do anything other than exercise that option." *Id.* at 87-88.

In *AKB Hendrick, LP v. Musgrave Enterprises, Inc.*, the Court of Appeals explained that a defendant's statement that he could "help out" with the payment of certain fees to extend a property inspection period could not rise to the level of tortious interference. 380 S.W.3d at 226, 235-36. The plaintiff argued that the defendant's statement rendered the performance of its contract more burdensome, but the Court of Appeals noted that the alleged promise to "help out" with existing contractual obligations could not cause the performance of those obligations to be any more expensive or burdensome than they were already at the time of contracting. *Id.* at 236.

The theme from these cases was applied specifically to a loan refinancing transaction in *City Bank v. Compass Bank*, 717 F. Supp. 2d 599 (W.D. Tex. 2010), *abrogated on other grounds by In re Tusa-Expo Holdings, Inc.*, No. 15-10274, 2016 WL 360795, at *7 (5th Cir. Jan. 28, 2016). There, the United

States District Court for the Western District of Texas considered and rejected a claim for tortious interference with contract asserted by an original lender against a refinancing lender. *Id.* at 620. The court explained that, "the loan agreement between [the borrower] and [the tortious interference claimant] did not restrict [the borrower's] ability to pay off the entire loan in full at any time . . . ." *Id.* at 621. The court also noted that it was common industry practice to refinance loans of the type at issue in that case. *Id.* The court observed that "[t]his is so even if that results in the old bank losing future profits that it would have earned had that lending relationship continued." *Id.* The court concluded that executing refinancing documents could not constitute tortious interference with contract. *Id.*[2]

Plaintiffs' Third Amended Petition fails to describe any provision in the purported contracts that prevent or restrict the conduct that Defendants allegedly induced. *See* Ex. A; *see also ACS Inv'rs, Inc.*, 943 S.W.2d at 431; *Newspaper Holdings, Inc.*, 416 S.W.3d at 87; *AKB Hendrick, LP*, 380 S.W.3d at 226; *New York Life Ins. Co.*; 114 S.W.3d at 116-17; *Johnson*, 2011 WL 4011429, at *4. In addition, Plaintiffs' allegations admit that refinancing is common practice in this industry. *See* Ex. A ¶ 20. Because there is no alleged contractual provision with which Defendants interfered (and accordingly no breach by the borrower), Plaintiffs' claims for tortious interference are subject to judgment on the pleadings.

Tortious interference with contract requires that a contract be subject to interference, meaning that a defendant must interfere with a particular contract provision. Merely inducing a contracting party to do what that party has a right to do under a contract is not actionable. In this case, Plaintiffs allege that Defendants solicited Plaintiffs' customers to refinance their loans through TitleMax. But Plaintiffs do not allege this conduct was precluded by any agreements. Indeed, the pleadings make no

---

[2] The court did conclude that a claim for tortious interference with contract could stand with respect to a provision in the original loan that prohibited incurring new indebtedness. 717 F. Supp. 2d at 621.

mention of how the contracts could be subject to interference. Accordingly, there can be no claims for interference with contract. *Id.* ¶¶ 53-57.

> i. <u>Plaintiffs' Claims for Tortious Interference with Prospective Business or Contractual Relations Fail Because Plaintiffs' Customers Merely Did What They Were Entitled to Do</u>

To allow Plaintiffs to assert claims for interference with prospective relations would directly contravene the Texas Supreme Court's directive to promote competition where no enforceable contractual restrictions exist. The Texas Supreme Court has explained that tortious interference with prospective business relations is a difficult claim to establish because of its chilling effect on competition where no contractual promises exist:

> It is one thing for A and B to compete for C's business, and quite another for A to persuade or force C to break his contract with B. Tortious interference with contract contemplates that competition may be lawful and yet limited by promises already made. Absent any such promises, competitors should be free to use any lawful means to obtain advantage. As one commentator has observed:

> [A]lthough one who interferes with the stability of a contractual relationship may be seen as an interloper and possibly a tortfeasor, one who interferes merely with a 'prospective business advantage' may be essentially a competitor. In an economic system founded upon the principle of free competition, competitors should not be liable in tort for seeking a legitimate business advantage. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 716-17 (Tex. 2001) (quoting Gary Myers, The Differing Treatment of Efficiency and Competition in Antitrust and Tortious Interference Law, 77 Minn. L. Rev. 1097, 1121–1122 (1993)).

Here, to the extent Plaintiffs' causes of action rely on Defendants purportedly "impermissibly searching the DMV Records by lienholder for Integrity's customers" to directly solicit Plaintiffs' customers, Plaintiffs have failed to allege any promises between these unidentified customers and Plaintiffs that limited the customers' ability to choose to utilize Plaintiffs' competitors. *See* Ex. A, ¶ 60 & ¶ 65. The customers merely did that which they were entitled to do, and choosing to refinance with a competing lender (especially one with a better product and lower rates) through another Credit Services Organization is not actionable tortious interference with a prospective relationship. *See*

*Schimmel v. McGregor*, 438 S.W.3d 847, 861-62 (Tex. App.—Houston [1st Dist.] 2014, pet. denied), *reh'g overruled (Sept. 18, 2014), review denied (Mar. 13, 2015)*. As Plaintiffs' claims for Tortious Interference with Integrity's Prospective Loan Contracts and Business Relationships and Tortious Interference with LoanStar's and Meadowwood's Prospective CSO Contracts and Business Relationships rely on agreements previously entered into between the purportedly lost customers and Plaintiffs, these claims fail as Plaintiffs do not allege the agreements prohibit a customer from refinancing with Plaintiffs' competitors. *See* Ex. A, ¶¶ 58-62 & 63-67.

## IV.  CONCLUSION

Plaintiffs failed to identify *any* specific contract that was converted by Defendants due to the conduct alleged in Plaintiffs' Third Amended Petition, did not identify *any* prospective business relationships that were interfered with, and did not identify *any* contractual provisions with which Defendants interfered with that prevented Plaintiffs' customers from terminating their contracts with Plaintiffs. These pleadings are insufficient to uphold the claims of tortious interference with contracts and tortious interference with prospective business or contractual relations. *See* Ex. A, ¶¶ 53-57, 58-62 & 63-67. Defendants' request entry of Judgment on the Pleadings for these claims under Federal Rule of Civil Procedure 12(c). In the alternative, Defendants request that the Court order Plaintiffs to replead and provide the necessary specificity, including identification of Plaintiffs' customers and prospective customers that utilized Defendants' services due to the conduct alleged by Plaintiffs and all provisions of Plaintiffs' agreement with the purportedly lost customers or prospective customers, which prohibit the use Plaintiffs' competitors' services.

HOLLAND & KNIGHT LLP

*/s/ L. Bradley Hancock*
L. Bradley Hancock (Attorney-in-Charge)
S.D. Admission No. 21091
State Bar No. 00798238
Jeffrey D. Anderson (Of Counsel)
S.D. Admission No. 2338755
State Bar No. 24087100
1100 Louisiana Street, Suite 4300
Houston, TX 77002
713.244.6868
brad.hancock@hklaw.com
jeffrey.anderson@hklaw.com

GREENBERG TRAURIG LLP

Roland Garcia, Jr. (Of Counsel)
S.D. Admission No. 8420
State Bar No. 07645250
1000 Louisiana Street, Suite 1700
Houston, TX 77002
713.374.3500
garciar@gtlaw.com

ATTORNEYS FOR DEFENDANTS TMX FINANCE OF TEXAS, INC.; TITLEMAX OF TEXAS, INC.; AND TMX FINANCE LLC.

**CERTIFICATE OF SERVICE**

    I certify that true and correct copies of the foregoing were served on all counsel of record in accordance with the Federal Rules of Civil Procedure on the 12th day of December, 2017.

    Daniel Johnson
    Juan Garcia
    JOHNSON GARCIA LLP
    7324 Southwest Fwy, Suite 545
    Houston, TX 77074
    Telephone:  832-844-6460
    Facsimile:  832-844-6868
    daniel@johnsongarcialaw.com
    juan@johnsongarcialaw.com

    */s/ L. Bradley Hancock*
    L. Bradley Hancock